UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANELLE CASTELL,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

Civil Action No. 04-71766

HON. GERALD E. ROSEN
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Shanelle Castell brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Social Security Income (SSI) benefits under Title XVI of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be granted, and Plaintiff's Motion for Summary Judgment denied.

## PROCEDURAL HISTORY

On November 22, 1999, Plaintiff filed an application for SSI alleging an onset of disability date of April 8, 1999 (Tr. 41-43). After denial of her claim initially, Plaintiff filed a request for an administrative hearing, conducted on November 15, 2000 in Flint, Michigan

before Administrative Law Judge (ALJ) Robert E. Stalker (Tr. 323-347). Plaintiff, pro se, testified. (Tr. 327-342). Ann Trembly, acting as Vocational Expert (VE) also testified (Tr. 342-346). ALJ Stalker found that Plaintiff was not disabled (Tr. 17-18). Upon discovering that Plaintiff's exhibit file was misplaced, the Appeals Council remanded the case for rehearing (Tr. 17).[1] On November 4, 2003, ALJ Bennett Engelman held a rehearing in Flint, Michigan (Tr. 348-368). Plaintiff, then represented by Donald Papielarz, testified (Tr. 351-364). VE, Melody Henry also testified (Tr. 365-366). ALJ Engelman found that Plaintiff retained the ability to perform her past relevant work as a medical records clerk (Tr. 24). In the alternative, the ALJ found that although Plaintiff could not perform the full range of sedentary work, she retained the ability to perform a significant number of jobs in the national economy (Tr. 24). Plaintiff filed for judicial review of the final decision on May 28, 2004 [Docket no. 3].

## BACKGROUND FACTS

Plaintiff, born March 11, 1972, was age twenty-nine when the ALJ issued his decision (Tr. 18, 41). She completed tenth grade (Tr. 18). She worked as a newspaper inserter and medical records clerk (Tr. 246). Plaintiff alleges an onset date of April 8, 1999 due to chest pains, shortness of breath, and back pain (Tr. 51).

### A.     Plaintiff's Testimony

---

[1] The subsequent administrative decision indicates that the exhibits were found sometime before the rehearing on November 4, 2003 (Tr. 17).

1. **November 15, 2000 Hearing**

Plaintiff, a resident of Saginaw, Michigan, stated that she lived in a house with her three children (Tr. 328). She began her testimony by stating that she worked four hours a day as a medical filing clerk (Tr. 327). She indicated that although she desired to work full-time, fatigue prevented her from doing so. (Tr. 328). She stated that she possessed a driver's licence, but experienced back pain and breathing problems when she drove (Tr. 329-330). She denied any long-distance travel in the two years before the hearing (Tr. 330). She indicated that she was in the process of obtaining her GED (Tr. 330).

Plaintiff indicated that her primary health problems were chest pains and breathlessness (Tr. 331). She related that she felt winded even when performing fairly non-strenuous tasks  She testified that she worked four hours per day Monday through Friday, and spent between three and four hours each day performing household tasks, then spending her evenings helping her children with their homework, and reading (Tr. 331-333). She indicated that she slept restlessly, estimating that she did not sleep more than five hours a night (Tr. 337). She reported that she bathed and dressed without assistance (Tr. 337). She indicated that she had quit smoking and did not drink (Tr. 338).

Plaintiff expressed frustration that her chest condition obliged her to take pain medication (Tr. 333). She stated that when her condition first developed she experienced pain of such severity that she lost consciousness (Tr. 340). She related that her physicians had prescribed Motrin, Vicodin, and Tylenol 3, but for the month and a half prior to hearing she took only Motrin (Tr. 334). She estimated that her chest pain had obliged her to seek

emergency room treatment on three occasions in the past twelve months (Tr. 334). She indicated that she used an inhaler two or three times a day (Tr. 335).

Plaintiff approximated that she could walk for twenty to thirty minutes as long as she had access to her inhaler (Tr. 337). She stated that she could lift up to ten pounds comfortably (Tr. 337).

### 2. November 4, 2003 Hearing[2]

Plaintiff testified that she had not yet completed her GED (Tr. 352). She reported that she had dropped out of school in tenth grade because of problems coping with her mother's death the same year (Tr. 352). She reported that her job as a newspaper inserter did not require her to lift more than ten pounds (Tr. 352-353). She later worked as a medical records clerk, but was laid off at the end of October, 2001 due to attendance problems (Tr. 354).

Plaintiff indicated that she still suffered from sarcidosis, which caused her chest pains and shortness of breath (Tr. 354). She testified her medications, Vicodin and Phenorgen with Codeine made her tired, stating that she was "always sleepy" (Tr. 355). She stated that she also took Motrin, and ibuprofen (Tr. 355). She related that she was unable to perform household chores because of her condition, stating that her sister received payment from the State to come to her house and perform household chores for her (Tr. 356). In response to questions from her attorney, she stated since her first hearing that her medication relieved her pain to a great extent, but she experienced constant fatigue (Tr. 359). She approximated that

---

[2]Plaintiff's testimony duplicating statements made at the previous hearing is omitted.

she could not sit or stand for more than five or ten minutes at a time and could not walk for more than half a block (Tr. 360-361). She estimated that she could not climb more than three or four steps without becoming winded (Tr. 361). She reported that she could not drive and felt that she was not "a good decision maker" after taking pain medication (Tr. 363). She stated that she took a thirty minute nap after she picked her children up after school (Tr. 364).

### B. Medical Evidence

In March, 1999 Plaintiff sought emergency room treatment for chest pains (Tr. 95). A chest x-ray showed a right hilar mass (Tr. 96). Hospital staff gave Plaintiff Toradol which relieved her discomfort (Tr. 95). Plaintiff was advised to obtain a CT scan for further evaluation (Tr. 97). A bronchoscopy and mediastinoscopy performed the next month showed no abnormalities (Tr. 105). Robert N. Jones, M.D. found that Plaintiff's tests showed evidence of sarcoidosis (Tr. 107).

In June, 1999 Terri Williams, M.D., noted that Plaintiff reported increased pain with ambulation and activity (Tr. 111). Plaintiff reported good result with Vicodin (Tr. 112). Medical imaging performed the same month showed "relative prominence of the right hilum," but otherwise normal results (Tr. 113). Tests conducted in July, 1999 showed similar results (Tr. 114). In November, 1999 Plaintiff sought emergency room treatment for an unrelated condition (Tr. 118). A complete review of Plaintiff's systems indicated that her lungs were clear (Tr. 118). Plaintiff listed Motrin as her only medication (Tr. 118). Later in November, 1999 Plaintiff sought emergency care for chest pains (Tr. 122). She received a prescription for Vicodin for chest wall pain (Tr. 123). Impressions indicate Plaintiff

experienced hyperinflated lungs and that the enlarged hilar mass discovered in March, 1999 was stable (Tr. 124). A stress test performed in December, 1999 showed normal results (Tr. 146).

In April, 2000, Siva Sankaran, M.D. examined Plaintiff on behalf of the State of Michigan Disability Determination Services (Tr. 147). Plaintiff reported continuing lower and mid back pain as well as chest pain and shortness of breath (Tr. 147). She reported taking a Vanceril inhaler, two puffs four times a day and Motrin, 600 mg. three times daily (Tr. 148).

Dr. Sankaran noted that Plaintiff's CT scan showed conditions suggestive of sarcoidosis (Tr. 149). He concluded that Plaintiff's symptoms of shortness of breath and chest pain were the result of "probable sarcoidosis," finding that Plaintiff suffered from "mild restrictive airway disease" (Tr. 149). He found that other than mild scoliosis of the dorsal spine, Plaintiff's physical examination was essentially negative (Tr. 149).

In April, 2000 John R. Bartone, M.D., performed a Physical Residual Functional Capacity Assessment of Plaintiff (Tr. 159-168). Dr. Bartone found that Plaintiff retained the capacity to lift fifty pounds occasionally and twenty-five pounds frequently (Tr. 150). He found further that Plaintiff could stand and/or walk for about six hours in a eight hour workday and sit for approximately six hours (Tr. 160). He found that Plaintiff should climb ramps or stairs only occasionally and should never climb rope or scaffolds (Tr. 163). He stated that Plaintiff should avoid concentrated exposure to heights, fumes, odors, dusts, gases, and poor ventilation (Tr. 165). Stating that he had considered the objective medical

evidence, Dr. Bartone found Plaintiff's statements to be only partially credible (Tr. 162).

In March, 2002 Plaintiff sustained injuries in an automobile accident (Tr. 267). She reported to emergency care staff that she took no medication except for Motrin on an intermittent basis (Tr. 267). Medical reports show that her lungs were clear (Tr. 267). Medical staff found that she experienced acute mild cervical strain (Tr. 268). She exhibited a full range of motion (Tr. 268). X-rays taken of her cervical spine showed normal results (Tr. 269). Plaintiff resumed taking Vicodin (Tr. 277). In April, 2002, Plaintiff began physical therapy (Tr. 264). On April 23, 2002, Plaintiff related to staff that her former husband pushed her into a wall (Tr. 260). Clinical notes made later the same month indicate that she reported dizziness at the time of her examination due to taking Vicodin the prior evening (Tr. 260). Plaintiff was discharged from physical therapy on May 2, 2002 due to her lack of progress (Tr. 256). Annette Nickel, P.T., noted that Plaintiff was "functionally able to perform activities that she states that she is unable to do," observing that her "symptoms were greater than signs" (Tr. 256). Therapist Nickel opined that Plaintiff's lack of progress could be attributed to depression caused by her personal problems (Tr. 256).

In October, 2002, Dr. Sankaran examined Plaintiff again on behalf of Disability Determination Services (Tr. 278-280). She reported that she could walk two to three blocks without difficulty, but suffered back and neck pain when bending over or lifting more than ten to fifteen pounds (Tr 278). Dr. Sankaran noted that Plaintiff's x-rays were all normal (Tr. 278). She told Dr. Sankaran that sarcoidosis bothered her "intermittently, but had not been a problem for the last 5-6 months" and that she did not take medication for the condition

(Tr. 279). Dr. Sankaran found that Plaintiff showed "minimal limitation of motion of the lumbar spine, and normal range of motion in the cervical and shoulder regions (Tr. 280).

In June, 2003 Plaintiff reported to Farhan Ansari, M.D., that she experienced chest pain every three to four months and shortness of breath and fatigue after walking two flights of stairs (Tr. 306). He assessed Plaintiff with Stage I sarcoidosis, reduced diffusion capacity (with no pulmonary involvement), and mild asthma (Tr. 307). He recommended a short course of steroids, cautioning Plaintiff to take Vicodin only when she experienced severe chest pain (Tr. 307). Plaintiff expressed reluctance to use steroids (Tr. 308).

### C. Vocational Expert Testimony

#### 1. November 15, 2000 Hearing

VE, Ann Trembly classified Plaintiff's previous work as light, unskilled work (Tr.342). The ALJ posed the following question to the VE:

> "I'd like to have you assume I made the determination [Plaintiff] could do a restricted range of unskilled, sedentary work. That work to provide her with a sit/stand option to accommodate her problems with being on her feet for extended periods of time, either as a result of or a combination of the back problem and the lung problem. She should be in a relatively clean environment. In fact, as clean as the can identify because of her lung problem. She's indicated some medication side effects, so be sure to place her also in a non-hazardous work environment. With those restrictions on a full range of unskilled, sedentary work, would there be any jobs that would meet that hypothetical situation?"

The VE answered that given the above limitations, Plaintiff could perform 2,100 security monitor jobs, 4,300 order clerk jobs, and 10,000 general office clerk jobs, stating that she limited the geographic scope of her determination to Michigan's lower peninsula

(Tr. 243).

### 2. November 4, 2003 Hearing

VE Melody Henry testified that she had prepared an analysis of Plaintiff's former work, placing her job as a medical records clerk at the light exertional level due to the need to stand, rather than because of the lifting requirements (Tr. 246, 366). She stated that the maximum lifting requirement would be ten pounds (Tr. 366). She stated the air in such a working environment would be free of gas, fumes, or dust and would not aggravate Plaintiff's condition unless cleaning supplies were "an issue" (Tr. 366).

### D. The ALJ's Decision

### 1. November 15, 2000 Hearing

Based on Plaintiff's November 22, 1999 application, ALJ Stalker held that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 173). Citing Plaintiff's medical records, the ALJ found that Plaintiff suffered from chest pain and lung disease (Tr. 174). The ALJ held that Plaintiff's above impairments were considered severe based on the requirements of 20 C.F.R. § 404.1521 but found nonetheless that they did not "meet or medically equal" one of the impairments found in Part 404 Appendix 1 Subpart P, Regulations 4 (Tr. 174).

The ALJ found that while Plaintiff was unable to perform her past work, she retained the residual functional capacity (RFC) to "lift and carry no more than 10 pounds at a time (sic), sit approximately 6 hours in an 8 hour day, [requiring] an option to sit or stand as needed" (Tr. 178).

He concluded Plaintiff could perform a significant range of sedentary work that did not require lifting more than five pounds including jobs as a security monitor (2,100 jobs); order clerk (4,300 jobs); and general office clerk (10,000 jobs) (Tr. 178).

ALJ Stalker found Plaintiff's allegations credible only "to the extent that she is not able to perform strenuous work" (Tr. 175). He cited a clinical examination that was negative for lung disease and found only mildly restricted pulmonary function (Tr. 175). In further support of his determination, the ALJ observed that Plaintiff held a part-time job, performed household tasks for up to four hours a day, noting that the jobs listed by the VE were less exertionally demanding than Plaintiff's current activities (Tr. 175).

### 2.     November 4, 2003 Hearing

ALJ Engelman adopted the previous decision in large part, but found that based on VE Henry's testimony that the job of medical records clerk is generally performed at the sedentary to light category, Plaintiff could perform her past relevant work as a medical records clerk (Tr. 21). In the alternative, the ALJ adopted ALJ Stalker's conclusion that Plaintiff could perform a significant range of sedentary work, using the jobs listed in section D. 1. as examples (Tr. 22-23).

### **STANDARD OF REVIEW**

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a

-10-

scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). Furthermore, the Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).

In determining the existence of substantial evidence, it is not the function of this court to try cases de novo, resolve conflicts in the evidence, or decide questions of credibility. *Brainard v. Secretary of Health & Human Services,* 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). The substantial evidence standard "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen,* 800 F.2d at 545. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. *Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir. 1987); *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983).

### **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Plaintiff has the initial burden of establishing entitlement to benefits by proving the

existence of a disability. *Tyra v. Secretary of Health and Human Services,* 896 F.2d 1024, 1028 (6th Cir. 1990). Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The mere existence of an impairment, even a severe one, will not entitle the claimant to disability benefits unless the impairment prevents him from returning to his past work or any other substantial gainful activity existing in the national economy considering his age, education and work experience. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. § 404.1505. A claimant's subjective allegations of disabling symptoms are insufficient by themselves to support a claim for benefits, *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 713 (6th Cir. 1988), and the symptoms must be substantiated by some objective clinical or laboratory findings. *Hurst v. Secretary of Health and Human Services,* 753 F.2d 517, 519 (6th Cir. 1985).

In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) had a severe impairment; 3) had an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to his past relevant work; and 5) if not, whether he can perform other work in the national economy. 20 C.F.R. § 416.920(a). The burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the

claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Cole v. Secretary of Health & Human Services,* 820 F.2d 768, 771 (6th Cir.1987); *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984)

## ANALYSIS

### A.     Hypothetical Question

Plaintiff argues that ALJ Engleman erred by relying in part on the testimony and administrative findings from the previous hearing. *Plaintiff's Brief* at 11-13. She argues that her testimony from the later hearing in which she alleged that her condition had worsened since 2000, should have been granted more weight. *Id.* She notes that at the second hearing, ALJ Engleman did not pose a hypothetical question to the VE, relying instead on ALJ Stalker's hypothetical. *Id.* at 13. Plaintiff claims that the original hypothetical instructed the VE to consider Plaintiff's side-effects from medication, but "did not provide the VE with any meaningful factors to assess." *Id.* at 14.

To start with, ALJ Engelman was not required to use a VE to make the Step Four determination that Plaintiff could perform her former job as a medical records clerk. The court in *Dodds v. Commissioner of Social Security,* 2002 WL 1880754, 3 (E.D.Mich.,2002) stated that "because the ALJ based his decision that Plaintiff could return to her clerical job at Step 4 of the sequential evaluation on Plaintiff's description of the demands of her past relevant work, the ALJ was not required to consult a VE." Rather, the use of a VE is mandated at Step Five when a claimant is found to have non-exertional limitations. *See*

*Fast v. Barnhart* 397 F.3d 468, 470 (7th Cir. 2005). ("At step five of the sequential analysis . . . . where a nonexertional limitation might substantially reduce the range of work an individual can perform, use of the grids is inappropriate and the ALJ must consult a VE.")

Next, the Court must determine whether the hypothetical posed by ALJ Stalker in the 2000 hearing adequately states Plaintiff's limitations sufficient to support ALJ Engelman's 2003, alternative, Step Five finding that Plaintiff could perform a range of sedentary work (Tr. 22-23).

In *Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 779 (6th Cir. 1987), the court found that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [plaintiff's] individual physical and mental impairments." *See Eiseler v. Barnhart,* 344 F.Supp.2d 1019, 1027 (E.D. Mich.,2004). (*"*A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the plaintiff can perform.")

ALJ Stalker's hypothetical question, which was formed based only on testimony and exhibits available to him on November 15, 2000, does not serve as an adequate basis for ALJ Engelman's 2003 Step Five non-disability determination. First, as noted by Plaintiff, her 2003 testimony included accounts of back and neck injury caused by a 2002 automobile accident, and allegations of a general deterioration of her condition since the earlier hearing. Second, although ALJ Stalker instructed VE Tremblay to consider Plaintiff's side effects from medication in his hypothetical, Plaintiff's testimony at her first hearing indicates that

-14-

her side effects were quite minimal. She reported that she did not take anything but Motrin in the month and a half before the hearing (Tr. 334) She testified that she only sat or lay down when she had finished helping her children with their homework (Tr. 341). On the other hand, at the 2003 hearing, Plaintiff testified she took Vicodin everyday which made her constantly sleepy, reporting additionally that she was not a good decision maker when medicated (Tr. 355, 363).

Although ALJ Engelman's credibility finding was supported by substantial evidence for the reasons set out in section **B.**, his adoption of the previous ALJ's hypothetical becomes problematic when considering Plaintiff's alleged increased severity of side effects at the second hearing. Did ALJ Engelman adopt the degree of side effects alleged at the first hearing or the second hearing? VE Tremblay's testimony that Plaintiff was capable of a range of sedentary work cannot serve as substantial evidence if ALJ Engelman intended to adopt Plaintiff's later allegations of increased side effects. Further, the ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Sec. Administration,* 55 Fed.Appx. 333, 339, WL 236419, 5 (6th Cir. 2003) (*quoting Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995)). In this case, ALJ Engelman has not supported his Step Five determination of non-disability to allow this Court to follow his reasoning.

However, because the Step Four determination discussion, *supra*, did not require the use of VE testimony and was clearly based on substantial evidence, the ambiguity present in the previous Step Five determination, is harmless error at worst and does prevent this

Court from affirming the ALJ's Step Four findings.

**B.     Side Effects**

Plaintiff also faults the ALJ for failing to consider the side effects of her medication which she alleged caused almost constant drowsiness. *Plaintiff's Brief* at 14-15. She cites C.F.R. 404.1529(c)(3) in arguing that the ALJ should have considered the alleged side effects of her medication in making his findings. *Id.*[3]

However, *Social Security Ruling* 96-7p indicates that before an evaluation of a claimant's allegations of disability are considered, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment...that can be shown by medically acceptable clinical and laboratory diagnostic techniques. . ." *Id.* In addition, it is Plaintiff who bears the burden of proof in substantiating his claimed limitations. *See Duncan v. Secretary,* 801 F.2d 847, 853 (6th Cir.1986); *McCormick v. Secretary,* 861 F.2d 998, 1002-1003 (6th Cir.1988). *See also,Hurst v. Secretary,* 753 F.2d

---

[3]C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:
> "Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3).

517, 519 (6th Cir.1985) (limitations must be substantiated by some objective, clinical or laboratory findings.).

Having found Plaintiff's alleged limitations unsupported by objective findings, the ALJ was not required to continue to the second prong of the analysis that required him to consider her side effects.

The record contains a paucity of objective evidence supporting Plaintiff's claimed limitations. Records show that Plaintiff's lungs were clear at the time she sought emergency treatment in November, 1999 (Tr. 118). Plaintiff testified at her first hearing that she had not taken Vicodin in over a month and worked four hours a day (331, 334). In April, 2000 a physician concluded that other than a mild scoliosis, Plaintiff's physical examination was normal (Tr. 149). A physical therapist noted in May, 2002 that Plaintiff's alleged symptoms were greater than the objective signs of limitations (Tr. 256). In October, 2002, Plaintiff told Dr. Sankaran that she had not been bothered by sarcoidosis in five to six months (Tr. 279). In June, 2003, Plaintiff told Dr. Ansari that she became winded after climbing two flights of stairs, but testified at the November, 2003 hearing that she could not walk more than three or four steps without experiencing fatigue (Tr. 361).

Whether Plaintiff experienced legitimate side effects from her medication is not as important as whether she actually suffered from the underlying limitations for which she alleged a need for prescription drugs. Nothing in the record suggests that Plaintiff's Step Two impairments, which appeared to cause her intermittent rather than constant discomfort, justified her daily use of Vicodin. Indeed, Plaintiff's medical files strongly suggest the

opposite conclusion. Five months before Plaintiff's November, 2003 hearing, Dr. Ansari noted that Plaintiff did not experience chest pains more than every three or four months and urged her to undergo a short course of steroid treatment, urging her to limit her Vicodin use to her infrequent bouts of severe pain.(Tr. 308).

The ALJ properly found that such an underlying limitation did not exist to the extent alleged by Plaintiff. Therefore, Plaintiff's allegations of side effects from medication for which the ALJ found she had not established a need do not require consideration. Substantial evidence supports his conclusion that Plaintiff could return to her past work as a medical filing clerk.

## **CONCLUSION**

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                              s/R. Steven Whalen
                              R. STEVEN WHALEN
                              UNITED STATES MAGISTRATE JUDGE

Dated: May 17, 2005

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 17, 2005.

                              s/G.K.Wilson
                              Judicial Assistant